Good morning, your honors. May it please the court. My name is Caesar Kalinowski, and I'm appearing on behalf of the appellant, Michelle Kinnucan. In this matter, I'd like to reserve five minutes for rebuttal. On June 18th, 1967, Israel bombed a U.S. Navy ship that was running an intelligence operation for the NSA, killed 34 Americans, wounded over 170 more. In the days that followed, the House Appropriations Committee prepared the most exhaustive investigation of that attack that exists, and then it sent it to the NSA, who has used it for decades. Nearly 60 years later, the survivors of the attack and the general American public still know very little about what happened that day and what the government knew in that report. This case is about an investigative journalist's request for that report, which is subject to FOIA and its strong presumption of disclosure. Contrary to the district court's findings, all evidence and inferences in this case show that NSA has not met its burden to withhold the document. It unequivocally controls the report. So what do you what do you think the test should be for documents that are held by an agency but that the agency received from Congress? Your Honor, the Supreme Court has already given us the test and the burden, and that's in tax analysts. And I understand that tax analyst was not a case about congressional records. It was a case about records from the court. And the distinction there is fairly immaterial, notwithstanding what the D.C. Circuit and or the lower court has found, because the judiciary is not subject to FOIA. The executive office, like in Kissinger, is not subject to FOIA. And so the and the Supreme Court in tax analysts said the purpose for which something is created is irrelevant because it's whether the agency has created or obtained the document and is in control at the time that the request is made. And the burden is placed specifically on the agency to demonstrate and not disprove and not the requester to disprove that it is an agency record. So there's a high burden. And so those are the things that the agency must show. So, you know, the D.C. Circuit has a has said what needs to be shown here is that Congress manifested a clear intent to control the document. And do you disagree with that test? Absolutely. Your Honor, as our briefing discusses at length, that test was created in tax analysts. It was in the D.C. Circuit's lower court case in the Supreme Court, although they affirmed the ruling in that case, they specifically said that the creator's intent is irrelevant. There is no mens rea requirement. And ultimately, allowing the subjective intent of a party is really difficult, especially in a case like this, where we're talking about nearly 60 years later, what they intended to do or whether they intended or not to to allow the the D.C. test tries to take into account the fact that Congress is not covered by FOIA. Yes, Your Honor. Yeah. And neither is the judiciary, neither like the court in Rojas, this court in Rojas talks about. I mean, neither are private individuals. And this notion that Congress, because of its oversight authority, there's some special consideration is entirely divorced from the Supreme Court's precedent on FOIA cases and agency records. In Kissinger, the court did not look at whether or not when Kissinger created these telephone records, did he intend that they would later get used by the department, the State Department? In Kissinger, they looked at how were they used? Did the agency use it for its purposes? And were they stored in agency files? And this court in Rojas reaffirms that they said you've already said that the D.C. Circuit test looks at creator's intent. That's something the Supreme Court has said. You can't. D.C. Circuit's never even addressed that. They just say we continue to follow this test that we created that the Supreme Court implicitly. The Second Circuit follows the D.C. Circuit test, too? It does, Your Honor. So you're you you want us to do it. You can make that ask. I just am wondering, is that is that where this goes? You want us to basically disagree with the D.C. Circuit and the Second Circuit? Both the D.C. Circuit and the Second Circuit have adopted or maintain this intent test that is directly conflicts with the Supreme Court precedent. What do you claim is the Supreme Court's precedent? Tax analyst, Your Honor. Tax analyst is very clear on the test and the reasons that the D.C. Circuit has distinguished or claims they never deal with tax analyst after that. They just keep saying the test over and over again. They never say that the Supreme Court rejected intent. They don't address that. The Second Circuit doesn't address it. They just say Congress is special. Congress has oversight. Well, the judiciary has oversight. The executive, the office of president have his oversight over agencies. Individuals routinely provide information to agencies. And yet none of those entities are subject to FOIA. The test is not whether or not the individual or the entity that created it had some subjective intent. It's how the agency used it. Are we talking about the same intent, though? I mean, it seems like the intent that the Supreme Court was talking about in tax analyst was the intent for the agency to rely on the documents here. It seems like we're talking about the intent of Congress to maintain control of the documents. Is that not a distinction? It's not a distinction that matters, Your Honor, because the relevant question and they talk about this in Foresham, they talk about this in tax analyst. The relevant distinction is what did the agency do with it? And so to the extent that the D.C. Circuit test is examining, really, what did the agency think it could do with it? Maybe because Congress told it it couldn't do something. And did it comply with that mandate from Congress? That's a permissible potential factor to consider. And in Rojas, this court said specifically, it looks at whether it's in connection with agency related business, use of the documents, reliance on the document system for preserving. And so does this does this mean essentially that any time Congress transfers a document to an agency, regardless of what it says, that document then becomes subject to FOIA? No, Your Honor, that's that's not the case. There is Congress does have the ability to hold on to documents for its purpose and they can and it knows how to do this. And we see other cases in which it explicitly says this document is for you to show up and answer questions to us. You keep this separate. This is not a CIA document. This is not an NSA document. This is for you to answer questions to us or produce documents in response to our request. But even in those cases, they then revert when the document reverts back to the agency. It becomes an agency document unless there's continued restrictions. But so why why is there not a continued restriction here based on the banner? Well, let's get back to the burden, Your Honor. And the burden is on the agency to disprove the idea that these are agency records. And ultimately, there is no evidence whatsoever that Congress, whether you want to look at an intent standard or otherwise, that Congress intended this to be only their record. The only thing that the agency has is hearsay that a banner exists. And there's no reason why they couldn't have photocopied this banner and provided it so that the court could have looked at it and said, oh, the banner is there. It's on all of the reports. It hasn't been crossed out. You asked for that. It's not on the requester to disprove that it's on the request. And this is why the burden exists, Your Honor, is because in the context of FOIA, the agency holds all of the cards that the they have the access to the documents. There's no discovery in FOIA. A requester can't demand that they turn things over. And so it puts the burden on under your test. What should Congress have done to maintain the control of this document to make it not subject to FOIA when they transferred it to the NSA? Well, that presumes that wanted to, Your Honor. And there's no evidence that they wanted to. There are a number of cases and some of the D.C. circuit cases talk about exactly. We see Senator Feinstein or we see the committee writing a full paragraph that says this is a congressional record. This is for the use with Congress. This is not a CIA record. Even after the committee, this has to be held in trust. And it says that routinely. And we see that in all of the cases now. There is nothing like that here. There's a document documents also, you know, decades old. So there may be now a more robust practice, as you say. But why is what we have in the banner not a sufficient shorthand for what you're saying would be sufficient? Well, because ultimately all that banner says is that it couldn't be released until authorized by the committee. And the only evidence that has now been entered is that it was, in fact, authorized for release by the committee. It's when Gene Yates, the NSA legislative director, requested a copy and they authorized this dissemination. Once that happened. Well, don't don't aren't we talking about release beyond the agency? We're not, Your Honor. And the reason being is that a document, if they if that were the case, then they would have to specify that being so. But the district court believed that, well, that means to the public. But the Congress cannot control necessarily even if the agency engages in conduct, Congress can't control what happens to that document. It is on Congress to ensure that there it is clear and on the agency to comply. And here, all of the other evidence shows that the agency never considered this to be a congressional record that they do with the notes that they produced. The two notes actually, Your Honor, show that, in fact, there was no restriction whatsoever on the use or dissemination. The transfer memo does not click return. There's no restrictions on dissemination that are noted in there. And in fact, the agency, consistent with what about the marking, you know, saying not for release and top secret? Well, that's the banner, Your Honor, the banner. And again, excuse me, the top but the top secret was seemingly added by NSA. Well, there's no evidence of that and that they failed to meet their burden to show when the stamp was added, who added it, if there were any contemporaneous descriptions or notes to NSA about its use. All we have is this banner that they allege exists and these transfer notes and Judge Paz in the transfer notes, there's no return required. And ultimately, the agency starts passing it around. It goes to the working group on the USS Liberty incident. It goes to the director. The director finds it interesting. He sends it to heads of other departments. Ultimately, it ends up in the Crisis Collection Center at the NSA history section. It's a special Congress folder. It's there for anyone to use. And there's no evidence that there's not other uses. They failed that burden as well. But ultimately, two retired civilians use it in an NSA report that then NSA publishes to the public. There's no evidence that they went to Congress and said, hey, Congress, we reference we discuss this congressional report that's classified. Can we release this? They just do it. There's no evidence whatsoever that NSA believed Congress controlled this report or the information therein until it gets requested by FOIA. And post hoc justifications are simply insufficient. The only thing we really know about the transfers are the two notes. Is that right? Correct, Your Honor, that it was requested by NSA and that it ultimately then was transferred around within NSA until it landed in a presumptively open location where two retired civilians were able to use it. And that's all we're really that's all it's in the record, is that right? And a lot of that has actually not been supplied by NSA, even though they have the burden. And so to answer your earlier question, Judge Bress, yes, to create a test that is consistent with the United States Supreme Court's case and jurisprudence, this court would create a split. With that said, it does not need to, because the NSA had the burden to show even under the D.C.'s test, congressional intent to show that it had never used this elsewhere, that it that it held it in a specific area, all of those types of things. And it's provided none of that. You mentioned that this report was used by two retired civilians, but it was for an NSA report that stayed with NSA. It did until the until the agency decided that it was declassified and released it to the public. Yes, Your Honor. And I see that I'm into my my rebuttal time, but I'll note that that simply the banner alone is insufficient to show a continued intent to control in the same way that in attack. I think this is E.R. 130. You can see that there is still a banner on the attack on a signature, and it says not for dissemination until authorized by the NSA director. And yet we have that report in our hands because it was actually authorized. And so all evidence here shows that the report was not controlled by Congress and the NSA should have. Let me just ask you one last question. As I understand it, you know, the document was marked top secret on each of the pages or somebody says it was. Yes, Your Honor. But I understand the agency's position to be they're not relying on that, too. They're not, Your Honor. Right. I believe that's correct. And it's immaterial. In large part, they crossed that out and released that top secret information in the attack in a signature report. And so there's not even evidence that it continues. They could have gotten evidence. They could have submitted other evidence. Things get automatically declassified after a certain time. And ultimately, if when this case goes on remand, they will be able to make the argument under exceptions one or three that it's still subject to declassification or classification that can be exempt or rejected under that. OK, thank you. Thank you. We'll put three minutes up for you on rebuttal. Thank you. May it please the court. Mike Shee for the government. This case turns on a single key question, whether Congress has clearly manifested an intent to retain control over the public release of the committee report in question. And here the record looks quite different from what my friend on the other side has characterized it. NSA has two declarations in the record that established that this banner saying not for release unless and until authorized by committee was affixed on the report prior to its receipt by NSA. And furthermore, that such banners are used by Congress to signal its desire to retain control over the conditions by which the associated document gets released to the public. And so nothing indicates that Congress intended to vitiate that very clear expression of its desire to keep control over the circumstances by which that document goes into the public record. And that's the reason why this document does not qualify as an agency record under the fact that NSA was able to use that document to produce the attack report. So that fact doesn't alter the conclusion, Your Honor. And I have a factual answer and a legal answer. So the factual answer is the evidence that the other side points to is that two retired agency employees with security agency. And this court's decision in the unbunked Rojas case makes quite clear that outside consultants in those circumstances are basically working for the agency. So it's not like they went and selected two random members of the public just to get out. They could use the information in the reports to produce the attack report. That's right, Your Honor. And that goes to the legal that goes to the legal answer. And if you look at the Second Circuit's decision in the Cox case and the D.C. Circuit's decision in the ACLU case, those are the two cases addressing the SISI report. And that's a very analogous situation where you have a circumstance where a report was given to the executive branch with the understanding that the executive branch could use it internally. But both the Second Circuit and the D.C. Circuit held that that wasn't sufficient evidence of a desire by Congress to vitiate the initial distribution restriction that Congress placed on that report. And so that's what you have here. Mr. Sheehy, how do you handle the counsel, your friend's citation of tax analysts saying that tax analyst is contrary to those two circuit court cases? So tax analyst just doesn't stand for the broad proposition that opposing counsel's reading it for tax analysts addressed a circumstance where someone submitted a FOIA request for public district court decisions that were housed in the Department of Justice. And so that case didn't present the question whether an entity that is not subject to FOIA has placed a distribution restriction on the documents. What weight to give to that distribution restriction? And so that's reason why both the D.C. Circuit and the Second Circuit have rejected this oversimplified view that tax analyst provides a complete answer to the question. And it would be, to my knowledge, this would be the first court of appeals in the country to embrace that view if this court endorsed plaintiff's reading of tax analysts. Could I ask you with respect to your factual explanation a minute ago? When they prepared the attack report, did they seek authorization from Congress to use the two volumes to prepare that report? I don't know. They felt free, they could just use it for that purpose? I don't know, Your Honor. To my recollection, the record doesn't contain any information about the circumstances of NSA's communications with Congress for that report. But I'll make something to be quite clear about is the attack report is not, and this may be an obvious point, but it's a critical one, the attack report is not the committee report that plaintiff wants. And so when it came time for the agency to decide whether to publicly release the report as opposed to merely use it internally, in 2008 and then again in 2020 and then again in 2024, the agency reached out to Congress and asked, you know, somebody has requested public release, may we do that? And on the two instances in which Congress responded, Congress indicated that nothing had changed with respect to the banner. And so the reason why those are the relevant instances are not, you know, this attack report, which just goes on, you know, the agency may have used the document internally is because the key question has to do, of course, not with internal use within the agency, but instead with congressional intent to retain control over public dissemination. To what degree does the attack report reveal the contents of the HAC volumes? My understanding is the attack report cites the underlying committee report as a factual source. One of the declarations, I think, contains pages from the attack report that describe the extent to which the attack report relied on the committee report. And so I'd refer your honor just to that attachment to the declaration. But the critical piece of that is that at no point has the agency publicly disclosed the actual committee report in question and certainly not in the attack report and certainly not in any other circumstance. And that let me ask you, is it as another factual question, is it really undisputed that at the time of the transfer to NSA that the two volume report had the banner on it, that the banner was placed there by the congressional committee? So for purposes of summary judgment, the answer to that is yes, your honor. So what we have in the record is two agency declarations, and you can see these, this is the D'Amelio declaration at pages 111 and 112 and the Stevens declaration. And they make clear that on the basis of their expertise, the banner was placed there by Congress prior to receipt by the agency. And the only evidence we have on the other side is speculation about other circumstances in which the banner might have appeared. And that's just insufficient to carry the day at summary judgment. And to the extent that it was stamped top secret, was that also placed there by the congressional committee or is that placed there by the NSA or do we know? So our understanding is, and this is at page 114 of the second volume of the ER, the declarant stated that the report was classified as top secret because it had information classified by DOD as top secret. And that's the reason why NSA is not relying on the top secret marking as an indicator of congressional attempt. Was it NSA that classified it as top secret? I'm not sure, your honor, who specifically was responsible for the initial classification, but NSA certainly isn't arguing that it was Congress's decision to say also top secret. Justice, do you think we should adopt the D.C. Circuit's test? Yes. Why? Because this test is the best test out there that accounts for the dueling considerations that the statutory question presents. Opposing counsel has described FOIA as a disclosure statute. Full stop. That's not an accurate description of FOIA. FOIA respects a very highly reticulated balance between public disclosure and the circumstances under which documents can't be publicly disclosed. As evinced by, among other things, the reason why we're here is because Congress has a highly reticulated definition of who counts as an agency and Congress very clearly defined itself out of FOIA. And the reason that's significant, your honor, and this is why opposing counsel's reading of tax analysts is incorrect, is because there are very significant policy questions raised when an entity that's not subject to FOIA, that has a constitutional prerogative to conduct oversight over the executive branch, has expressly indicated that it wants to retain control over a document. And the argument on the other side is unless Congress encants some magic words, that document just suddenly becomes an agency record. If that were true, one would have to think that Congress drafted FOIA in such a way to put it to this very difficult choice of either exercising its oversight function over the executive branch or ceding control over the records that it itself produces. And so it's for that reason that the D.C. Circuit and the Second Circuit have adopted this test that focuses on the question whether Congress has clearly manifested an intent to retain control over the document. And that's the reason why we think that's the only test this court should adopt. You also don't need to take just my word for it. At prior stages of this litigation, a plaintiff actually agreed that the D.C. Circuit and the Second Circuit should adopt a correct test for circumstances like this. And it wasn't until subsequent proceedings that plaintiff altered the legal position. And of course, plaintiff is free to select whatever test plaintiff believes is appropriate. But the fact that even plaintiff at one point in this litigation agreed that the Second Circuit and the D.C. Circuit had got the test correct, I think just underscores that this court in this case should adopt that test as well. The plaintiff says that, you know, the banner basically is that the banners conditions no longer apply because it has been released. It was released to the NS. It was released outside of Congress. And so therefore, that's a different interpretation of the banner that supports them. How do you address that? So I would point your honor to the declarations in the record and also to the plaintext of the banner. The plaintext of the banner says not for release unless and until authorized by committee. It does not say it doesn't put any sort of qualifiers on that. And what they're asking for is release of the report. I think they say what has been released. It was released to the NSA. That's true, your honor. And then I would point you to the the fact that the banner doesn't contain, you know, this banner applies only to circumstances of release to an executive agency. Right. The banner speaks much more and talks about release generally. But I'd also point to the declarations in the record where the declarants make clear that banners such as this indicate not what plaintiffs speculate this banner means, but instead an intent to retain control over the terms of release more broadly. And finally, I would note that the agency has conducted itself in a manner consistent with that reading of the banner, because, again, in 2008, 2020, and then I think in 2024, the agency, when confronted with a request for public release, went to Congress to ask Congress for its views. And so everything in the record. It's hard to know how much weight to place on that, though, because it's it seems like someone just phoned over to someone and asked and that was what came back. You'd think there might be a more robust process that could be undertaken for something like that. You know, I can't speak to what sort of process Congress might put in place, your honor. What I can say is that to the extent that your honor doesn't think the banner itself speaks clearly enough. I would just note that these are additional data points that your honor could consult in concluding that the banner just meant what it says and not that the banner had some narrower meaning where, you know, the it applies only to release to the committee and then the restriction disappears in that circumstance. For example, you might have a different case of Congress like lined through the banner before handing it over to the agency. What would have happened if you had called over and spoken to the staffer and the staffer had said, no, we're fine with it being released? I'm sure the agency would have taken that into consideration. I don't know what the agency would have done in that circumstance, but, you know, it certainly would be consistent with the banner for the agency to check with Congress and the fact that the agency checked with Congress just underscores that the banner just means what it says. Is there not any kind of more established? I don't know how often this comes up. Obviously, we've never had a case on this, but is there not some more established or formal process for going to Congress and checking? I don't know, your honor. I know that this was the process that was followed in this case, and I just there's no information that I have about any more formal Congress that process that Congress or an agency may have put in place. But I would note again that. Can the plaintiff go directly to Congress and ask Congress? Oh, absolutely. Right. Because the reason why I guess we're here is because plaintiff, for whatever reason, hasn't succeeded in getting this report from Congress. And so that's why plaintiff is taking this sideways approach of trying to get through FOIA, a document that, you know, concededly plaintiff would not have been able to get from Congress had plaintiff submitted a FOIA request to Congress, because, of course, a FOIA request to Congress is just not a thing under the statute. And so that the fact that plaintiff could just obtain this document from Congress by asking Congress for permission just highlights the extent to which this report remains in congressional control, notwithstanding the fact that it is in the possession. One copy of this report is in the possession of the agency. You know, I realize this took place over 60 years ago. Is that what the timeline is? That sounds right, your honor. Yeah. You know, it seems kind of even back then you would think that a report like this over a very serious political incident or international incident, that when the document was when the two volumes were transferred to the NSA, that it would have been done a little more formalistic. So, your honor, it's kind of strange that it just ends up in the hands of the NSA. You know, I make two points. The first is factual and the second is, again, legal. The factual point is it's not strange at all that Congress and the executive branch would work together to share the fruits of congressional oversight. And it's also not strange that in those circumstances, Congress would want to allow the executive branch to use a document that it had produced, but retain control over the circumstances of public disclosure. And I'd also point, your honor, to the Goland case. You know, why don't you come over and take a look at this document? It's got some interesting information. They could do that, your honor. But, you know, it ends up, the two volume report ends up in the hands of the NSA and it's used to produce this attack report that's, you know, circulated around the NSA and various people. Yeah, but none of the internal use of the report undermines the separate restriction on public release that Congress placed. And that's the reason why how NSA used the document just isn't really legally relevant to that key question, which is who is retaining control over the circumstances of public release? Is it the agency or is it Congress? And here the evidence points to Congress. I'd also direct your honor to the, this is the legal response to the Goland case from the DC circuit. Which one? The Goland case from the DC circuit. I'm sorry, I just noticed that my time was up. May I complete this answer? Thank you, your honor. And in the Goland case, we similarly had a national security report produced by Congress. And the only thing on that report was just a banner that said secret. And the only other evidence in that record is that I think the stenographer and other people met and they were sworn to secrecy. So that was the evidence before the DC circuit. And the transcript case. Yes. And the DC circuit said, well, there, nonetheless, we have a clear manifestation of congressional intent. And yes, the facts here are slightly different, but we have a much clearer banner that is supported by declarations from experts at NSA making clear that banners like this are the sorts of things that Congress uses when Congress wants to retain control over public dissemination. Before you sit down, excuse me, what is the government's position on the reference to the report being purloined in the memorandum? So we haven't taken a view on what that means exactly, but we don't see a world in which that helps plaintiffs. You know, plaintiffs have a view on what purloined means. And I think that view is it's some kind of tongue in cheek reference. I'm not sure you'll have to ask them. But if purloined means that the agency acquired the report illegitimately or, you know, outside the context of its official duties, then that under, you know, even plaintiffs preferred test of tax analysts would mean that the document wasn't controlled by the agency. So, you know, we haven't relied on purloined in this case, but we don't see how, you know, if this court were to look at purloined, it could help plaintiffs make a case even under. Why have you not relied on it? Because you don't know what it means? We don't know. The record doesn't say what we know about purloined was disclosed in the declarations and the supplemental disclosures. And so I don't want to get out in front of my skis and make representations about what purloined entails or, you know, who all of these various characters were that were referenced in the additional disclosures. But what we do know is that they don't undermine the key point in this case, which, you know, we have this banner that says public release is within the Congress's control. The word public isn't in the banner, is it? The word public isn't in the banner. Right. But neither are the words, you know, release only applies once, you know, and so plaintiffs are of the view that this banner just means once it's released to an agency that equals this banner means you get to release it. Doesn't purloined clearly mean that somebody unauthorized to see the report had it in its possession? It's possible that purloined might mean that, Your Honor. The frank answer, Your Honor, is just we don't know, because, as Judge Pius pointed out, all of the events occurred many decades ago. And so that's the reason why we're not speculating about what purloined entails. But, you know, if Your Honor is right, that what purloined means is that somebody at NSA purloined the document from Congress, then, you know, I would have difficulty understanding how even under plaintiffs view of FOIA, which turns on whether a document was acquired in the legitimate conduct of official duties, plaintiff would be able to prevail. So, you know, we don't see this as a mark in our favor, but certainly it's not a mark in theirs. Okay, I think we've exhausted our questions. Thank you very much, and we'll hear rebuttal. Thank you, Your Honors. I'd note it. My colleague on the other side said number of times we don't know. We're not sure. We don't know. We didn't look into that. We don't take a position. And yet FOIA places the burden on the NSA because the NSA could have gone and talked to Lieutenant Kozak. They could have gone and talked to Gene Yates. They could have found other documents. Are these people alive? They are alive, Your Honor, and we've even presented evidence of that. And they could have gone and talked to individuals at Congress, and they could have gotten declarations from individuals at Congress. All they rely on is a declaration that says, we think this is a congressional record. And that's the case every single time that they withhold the document. That's why they're withholding it. That, I mean, what they're saying is there's a banner that says not for release. So I think their position would be, what more do you want us to have to come forward with? Right. Well, and under the case law, including in this court's case in Rojas, it is the use. In Forsham, it's the use. In every other Supreme Court case, it's the use regardless of where it was obtained from. And the NSA has already conceded they lawfully obtained it. Briefly on the purloin thing, that's a note from Lieutenant Kozak. We don't know what he meant there. They have not provided any evidence despite their burden to do so. But that was not from the committee. The committee, we have the transfer report from Gene Yates, and that says this is at your request. Here's the report. The document that references purloined is the later internal circulation document between the NSA director, the working group, the other NSA heads. And so that's a different thing. So how do you think purloined helps you, or do you think it doesn't? I think it doesn't matter, Your Honor, because it is the agency's use that matters. Even this court in Rojas said, misconduct. If they're using it, even in a way they're not supposed to, they use it for agency purposes, then it becomes an agency record. And there's a lot of reasons for that. Under opposing counsel's theory, under the NSA's theory, that they could use it for every single purpose. It could be the linchpin document the NSA uses. But simply because Congress said, well, you can't, this is our document. Now the public can have no idea whatsoever, the cornerstone of the NSA's entire world. It isn't that. It is how the agency used the document, where they stored it. That's every single case that has been examined. And the agency could have, under its burden, gotten a declaration from Congress. If Congress was so worried, they could have submitted a declaration, even though it would be still legally insufficient. Let me ask you a question. Suppose we were to conclude that that banner is ambiguous. What happens? Well, under FOIA and Rule 56, Your Honor, the inference would go in Ms. Knukin's favor. That that banner, taken in the proper inference, is that it was, as Judge Pai is just pointing out, or Judge Bea, I'm sorry, it was just pointing out, that it was in fact released. And there's no indication that it couldn't be released to the public, or that there was some other intent to control. Would there have to be any fact-finding? We would say, Your Honor, here, the facts are undisputed. Other than to the extent that they rely on hearsay, that that's not admissible evidence. But there is no additional fact-finding. And the government doesn't continue to get bites at the apple. They have a burden. They've failed to meet that burden. And the document should be disclosed. And there's no case, definitely not Goland, where it was in an executive session. It said, this is for internal purposes only. CIA presented evidence that it kept it in a special Congress-only box. There's none of that here. Let me ask you this other question. If we were to agree with the D.C. Circuit's test, do you lose? I would say we still win, Your Honor, because, again, the only evidence of congressional tending, D.C. Circuit requires clear evidence of intent to retain control. And then it still, as the second part of the test, looks at actually how they were used. Because the agency, if it misuses it, can turn it into an agency document, even if it's not supposed to. And so the D.C. Circuit looks at both of those. And here, all of the evidence taken with the case has ever said that nine words alone, nine ambiguous words on a document that has since been released is sufficient to withhold it from the public for time immemorial. If that were the case, all congressional documents would effectively be withheld, and then we'd have another exemption to FOIA that isn't in the language. So your position is that the agency should have produced more evidence to show that they didn't use this report? Yes, Your Honor. The agency should have produced evidence to show how they used it, how they didn't use it, where it did go, where it didn't go, where it's preserved to this day. We don't even, in these declarations, know where they got the report from. They don't even provide that information because, arguably, it was in a place that, by proper inference, any NSA employee, including apparently retired civilians, can access for the purpose of viewing. And in Rojas and in other cases, where is it stored? How is it preserved? They provided none of that. And so they failed their burden at a fundamental level, regardless of whether the test, which test is applied. So you would have them prepare a declaration saying, we didn't read the report after we received it? It only went to these handful of people. It was kept in a special Congress box. It never got used for any other purpose. We went and asked Congress before we published attack on the signature. They said that's okay and consistent. Any of that information they could have provided, and they provided none of it. And so they're forcing Ms. Knukin to effectively bear the burden of disproving the negative here with information that she obviously cannot obtain from NSA, and that's simply improper under FOIA. And for that reason, we would ask you to reverse the lower court and remand for disclosure. Okay, thank you. Thank you very much, Your Honor. We thank both counsel for the helpful briefing and argument. This case is submitted.
judges: PAEZ, BEA, BRESS